UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Coach, Inc. and
Coach Services, Inc.

    v.                                          Case No. 10-cv-141-LM

Gata Corporation, Martin
Taylor, and John Does
1 through 20

**O R D E R**

Coach, Inc. and Coach Services, Inc. (collectively "Coach") have sued in ten counts, seeking both damages and injunctive relief arising from the alleged sale of goods that infringe or dilute their intellectual property at a flea market that is operated by Gata Corporation ("Gata") and Martin Taylor.[1] Before the court is defendants' motion to partially dismiss Count IV (claiming vicarious and/or contributory copyright infringement) and to completely dismiss Count V (claiming contributory trademark dilution and tarnishment). For the reasons that follow, defendants' motion to dismiss is denied.

---

[1] Coach has sued John Does 1 through 20 for trademark infringement (Count VI), counterfeiting (Count VII), trade dress infringement (Count VIII), copyright infringement (Count IX), and trademark dilution and tarnishment (Count X). In addition, Coach has sued Gata and Taylor for contributory trademark infringement (Count I), contributory counterfeiting (Count II), contributory trade dress infringement (Count III), vicarious and/or contributory copyright infringement (Count IV), and contributory trademark dilution and tarnishment (Count V).

**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). But, "naked assertions devoid of further factual enhancement need not be accepted." Plumbers' Union, 632 F.3d at 771 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41

(1st Cir. 2011) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." United Auto. Workers, 633 F.3d at 40 (citation omitted). On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Plumbers' Union, 632 F.3d at 771 (citation omitted).

**Background**

The following facts are drawn from Coach's complaint. Coach manufactures and sells high-end purses, handbags, and other similar items. It also holds an extensive portfolio of intellectual property including trademarks, trade dress, and copyrights.

Defendants operate a flea market in Derry, New Hampshire, known variously as the Grandview Flea Market and as the Derry

Flea Market (hereinafter "Flea Market").  Gata owns the Flea Market and operates it on a day-to-day basis.  Taylor, in turn, is the owner and principal operator of Gata.

Vendors pay defendants a fee to set up at the Flea Market. Defendants have sole control over whether vendors may lease space at the Flea Market and conduct business there.  Shoppers must pay a fee to enter the Flea Market.

Defendants either know what merchandise vendors at the Flea market sell, or have the ability to learn what is sold there.  A substantial number of vendors have sold counterfeit or infringing merchandise including handbags, purses, wallets, and scarves bearing the marks of various designers including Coach, Louis Vuitton, Prada, and Gucci.  The availability of such merchandise is well known to the public, and that merchandise is sold for prices considerably below those charged for authentic designer goods.  Moreover, defendants have advertised the availability of such merchandise at the Flea Market in an effort to attract shoppers.

On June 6, 2009, federal agents and local law enforcement officers raided the Flea Market.  They seized, among other things, 7,515 counterfeit Coach handbags, wallets, wristlets, and scarves from four specific locations.  On March 20, 2010, investigators employed by Coach purchased counterfeit Coach items from four different vendors, and observed those vendors in

possession of many other counterfeit Coach items.  Those counterfeit Coach items incorporate Coach's intellectual property and, in addition, are inferior in quality to genuine Coach items.

Defendants benefit financially from the infringing activity that takes place at the Flea Market in several ways.  They receive payment for spaces at the Flea Market from vendors who sell counterfeit goods.  And, they also benefit from "increased customer traffic leading to increased revenue, attracting more vendors who wish to sell products to these customers, and the ability to increase fees for booth space based upon the higher demand for such space, and the increase in the value of the [Flea] Market as a whole."  Compl. ¶ 55.

This suit arises from Coach's allegations that numerous vendors at the Flea Market have sold goods that infringe on and/or tarnish their trademarks, trade dress, and/or copyrights. In the two counts at issue here, Coach asserts that: (1) defendants are liable for vicarious copyright infringement because they profited from the infringing activities of vendors at the Flea Market while having the ability to supervise and prevent those activities (Count IV);[2] and (2) defendants are

---

[2] Count IV also asserts a claim for contributory infringement, but that part of Count IV is not at issue in defendants' motion to dismiss.

5

liable for contributory trademark dilution and tarnishment (Count V).

## Discussion

Defendants argue that Count IV should be partially dismissed because Coach's complaint fails to allege the kind of direct financial benefit that is necessary to establish liability for vicarious copyright infringement. Defendants also argue that Count V should be dismissed because contributory trademark dilution/tarnishment is not a recognized cause of action. Coach objects to defendants' motion to dismiss on grounds that it is untimely, and also objects on the merits. While appreciating – and sharing – Coach's concern over defendants' dilatory handling of nearly aspect of this case, the court declines Coach's invitation to summarily deny defendants' motion to dismiss on timeliness grounds. Because the issues raised in defendants' motion could arise again as this case moves forward, it would seem the better course to address those issues now, on the merits.

The court first considers defendants' argument that Coach has failed to state a claim for vicarious copyright infringement and then considers defendants' argument that there is no such thing as a cause of action for contributory trademark dilution and tarnishment.

A. Vicarious Copyright Infringement

"The theory of vicarious [copyright] infringement 'allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'"  Negron v. Rivera, 433 F. Supp. 2d 204, 219 (D.P.R. 2006) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 n.9 (2005)).  Here, defendants argue that Coach has not adequately alleged the first element of its claim, i.e., that they profited directly from the infringing activities of vendors who sold infringing and/or counterfeit goods at the Flea Market.

The First Circuit has yet to decide a case in which the first element of a claim for vicarious copyright infringement has been at issue.  But, the Ninth Circuit has held that a copyright owner sufficiently stated the direct-profit element of a claim for vicarious copyright infringement by alleging that the operator of a swap meet "reap[ed] substantial financial benefits from admission fees, concession stand sales and parking fees, all of which flow[ed] directly from customers who want[ed] to buy . . . counterfeit recordings at bargain basement prices." Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 263 (9th Cir. 1996).  As the Ninth Circuit has further explained: "Financial benefit exists where the availability of infringing

7

material acts as a draw for customers." Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001)) (internal quotation marks omitted). Moreover, "[t]here is no requirement that the draw be 'substantial.'" Ellison, 357 F.3d at 1079. "The essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008) (quoting Ellison, 357 F.3d at 1079) (internal punctuation omitted).

In paragraph 43 of the complaint, Coach alleges that the availability of counterfeit merchandise at the Flea Market draws customers. In paragraph 45, Coach goes one step further, alleging that Gata and Taylor have themselves attempted to draw shoppers to the Flea Market by promoting the availability of such merchandise. Finally, in paragraph 55, Coach alleges at least three financial benefits that flow from allowing the sale of infringing merchandise: (1) an increase in paying customers; (2) an increase in the number of fee-paying vendors who want to set up at the Flea Market; and (3) the ability to charge higher booth fees, based on increased customer traffic. Those factual allegations, if proven at trial, would be more than sufficient

to establish the first element of a claim for vicarious copyright infringement.

Finally, the court notes that defendants' reliance on Hard Rock Cafe Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143 (7th Cir. 1992), and Louis Vuitton is misplaced. Regarding Hard Rock Cafe, as defendants correctly point out, any discussion of vicarious copyright infringement in that trademark case is mere dictum. See 955 F.2d at 1150 & n.4. And Louis Vuitton is an order granting the defendants summary judgment on a claim for vicarious copyright infringement due to the plaintiff's failure to meet its burden of production. 591 F. Supp. 2d at 1110. There is nothing in that order to support the proposition that, in this case, Coach has not alleged facts sufficient to state the direct-profit element of its claim.

In sum, the facts Coach has alleged are sufficient to state a claim for vicarious copyright infringement. Accordingly, defendants are not entitled to dismissal of an part of Count IV.

### B. Contributory Trademark Dilution and Tarnishment

Defendants argue that Count V should be dismissed because "courts have discussed contributory dilution, [but] no appellate court or statute has yet established the cause of action." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (citing Acad. of Motion Picture Arts & Scis.

v. Network Solutions, Inc., 989 F. Supp. 1276, 1279 (C.D. Cal. 1997)). In defendants' view: "No court in this Circuit has recognized this cause of action. This court should not be the first." Defs.' Mem. of Law (doc. no. 33-1), at 1.

To be sure, the cause of action on which Coach relies in Count V is not well established: "In a few cases, plaintiffs have brought claims of contributory dilution, but to date there has been little jurisprudence on the subject." Louis Altman & Malla Pollock, 4 Callmann on Unfair Competition, Trademarks and Monopolies § 22:13, at 22-199 (4th ed. 2009). That scant jurisprudence, however, counsels against dismissing Coach's claim, as does a leading authority in trademark law, who has written: "While there is no authority directly on point, there would seem to be no logical reason why the doctrine of contributory infringement should not apply to a claim under the federal antidilution law." J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 24:133, at 24-413 (2010).

In Lockheed Martin, the Ninth Circuit did point out that no appellate court has established a cause of action for contributory dilution. See 194 F.3d at 986 (citation omitted). But, that court also noted that at least one district court has recognized such a claim. See id. (citing Kegan v. Apple Computer Inc., No. 95 C 1339, 1996 WL 667808 (N.D. Ill. Nov. 15, 1996)). Ultimately, the Lockheed Martin court affirmed the

10

trial court's decision to deny the plaintiff leave to amend its complaint, on grounds of futility, because the plaintiff could not assert the factual allegations necessary for a claim of contributory dilution as that cause of action had been defined in Kegan. 194 F.3d at 986. The court did not, however, hold that contributory dilution is not a valid cause of action. In Tiffany (NJ) Inc. v. eBay, Inc., an opinion issued after a bench trial, Judge Sullivan observed that "[c]ontributory dilution has not been recognized in the Second Circuit Court of Appeals." 576 F. Supp. 2d 463, 526 (S.D.N.Y. 2008). Then, however, Judge Sullivan went on to assume that such a claim did exist and ruled against the plaintiff on the merits, based on the elements set out in Kegan.

So, what the contributory dilution jurisprudence shows is one claim that survived summary judgment, see Kegan, 1996 WL 667808, at *12, one claim that went to the factfinder, see Tiffany, 576 F. Supp. 2d at 526, and no appellate decision rejecting the existence of such a cause of action. While it might be argued that Coach has failed to state a claim for contributory dilution, as that cause of action has been described in Kegan and Tiffany, that is not defendants' argument. They simply argue that there is no cause of action for contributory dilution. Because that cause of action does,

in fact, exist, defendants are not entitled to dismissal of Count V based on the argument they have advanced.

## Conclusion

For the reasons given, defendants' motion to dismiss, doc. no. 33, is denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

April 26, 2011

cc: Kelly Martin Malone, Esq.
Thomas Morgan, Jr., Esq.
Adam M. Ramos, Esq.
Jeffrey K. Techentin, Esq.